Brown, Executor, Appellant, vs. The City of Baraboo, Respondent.

*December 14, 1897 — January 11, 1898.*

{1, 2) *Plats of land: Highways: Dedication: User: Deeds. (3) Limitations: Tenants in common.*

1. Upon a recorded plat a strip of land south of and adjoining a river was marked "reserved for private use." South of said strip was block 7, on the east side of which was Walnut street and on the west side Vine street. Upon the plat said streets extended only to the reserved strip, but in fact Vine street was used as a public street to the river. A deed of a portion of said reserved strip described the premises conveyed as bounded "on the east by Walnut street, on the south by block No. 7, on the west by Vine street, and on the north by the center of" the river. *Held,* that the grantee in such deed took title to the center of Vine street extended, subject to the public easement; and that a conveyance of all the remainder of said reserved strip included the west half of Vine street.

2. On the north side of the river, the plat extended to the town line. North of said line was another plat in which Oak street was in direct line with Vine street. Water street ran east and west along the south side of blocks 1, 2, and 3, but the south line of the western portion of said street, through which Vine street would run if extended across the river, was not designated, there being no lots between Water street and the river at that place. Two streets entered the eastern portion of Water street from the south, and three entered the street from the north, one of the latter, the name of which was not designated, being in direct line with Vine and Oak streets. The plat stated that all streets were sixty-six feet wide. *Held,* that the recording of said plat and the public use of the unnamed street, and of Water street along said three blocks, for more than forty years, constituted a dedication of such streets to the public, notwithstanding a requirement that plats should "particularly describe and set forth all streets . . . giving names, width, courses, boundaries, and extent."

3. Lands descended to a husband and wife as tenants in common. The wife died leaving as her heirs several children, some of whom were married women, to whom her interest descended subject to the husband's estate by the curtesy. The husband thereafter executed a warranty deed of the whole premises purporting to convey the

Brown vs. The City of Baraboo.

whole title, and the grantee went into possession. In 1863 the husband died. *Held*, that the ten-years statute of limitation commenced to run against the heirs of the wife, not under disability, upon the death of the husband, and against the married women upon the enactment of ch. 29, Laws of 1872, removing the disability of coverture. An action by said heirs to recover possession of their interest in the premises, which was not commenced until 1892, was therefore barred.

APPEAL from a judgment of the circuit court for Sauk county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

This is an action of ejectment, and was commenced by William Brown, October 10, 1892, to recover an undivided four-tenths of an undivided one-half of a strip of land in *Baraboo*, four rods wide and forty rods long, and extending from the town line, at the south end of Oak street, south, across Water street, the Baraboo river, the mill race, and the reservation, to the north end of Vine street, as indicated on the old plat of the village of Baraboo, the east and west sides of said strip being in line with the east and west sides, respectively, of Oak and Vine streets extended. Issue being joined and trial had, the referee found in favor of the defendant, and the court confirmed such findings, and from the judgment entered thereon accordingly William Brown brought this appeal. Pending the appeal the death of William Brown has been suggested and the cause continued in the name of his executor, *Benjamin F. Brown.*

The facts in this case, as so found or undisputed, are in effect as follows:

One George W. Brown, under whom the plaintiff claims title, September 29, 1846, became seised in fee of the E. ½ of the N. E. ¼ of section No. 2, in township No. 11 N., of range No. 6 E., in the county of Sauk. Said eighty acres include the strip of land in question, and extend north to the town line mentioned. George W. Brown conveyed, by warranty deed, to Delando Pratt and L. and J. Hayes, a piece of land and water rights, by metes and bounds, between the said

Brown vs. The City of Baraboo.

mill race and the river. The said George W. Brown, November 1, 1847, platted a portion of said premises, the said plat being designated as the Village of Baraboo, substantially as follows:

The said George W. Brown, by the said plat, dedicated to the public, as a public street, all that portion of the land and premises in the complaint herein specified and referred to which lies north of the south line of Water street, as designated on said plat of the village of Baraboo. November 24, 1847, the said George W. Brown sold and conveyed to

one Philarmon Pratt, his heirs and assigns, the following described premises, situated, lying, and being in Baraboo, in the county of Sauk, aforesaid, and bounded as follows, to wit: "On the east by Walnut street, on the south by block number 7, on the west by Vine street, . . . and on the north by the center of Baraboo river, together with the sawmill and the south one-half of the dam and one half of the water privileges and other privileges and appurtenances to the said piece or parcel of land belonging; *also all the land lying between the present race and the Baraboo river*, excepting a piece of land and right of water . . . conveyed by deed to Delando Pratt, Louis Hayes, and Josiah Hayes," aforesaid. At the time of the execution and delivery of the deed to Philarmon Pratt, Vine street, as delineated upon the plat, did not extend north beyond the north line of block No. 7, but in fact, at the time of such conveyance, the said Vine street extended north to the mill race on the south side of the Baraboo river; that is, the four-rod strip (included in the complaint herein) lying immediately north of the north limit of Vine street, as delineated upon the said plat of Baraboo, at the time of the conveyance to Philarmon Pratt, was used by the public as and for a public street as far north as the mill race on the south side of the Baraboo river, and the lands by the said George W. Brown so conveyed to said Philarmon Pratt were in and by the deed bounded on the west by such street.

George W. Brown died intestate, without issue, and unmarried, December 15, 1847, being at the time twenty-eight years of age, leaving him surviving his father, Chauncey Brown, and his mother, Clarissa Brown, as his only heirs at law. At the time of his death he was seised of that portion of the said four-rod strip of land, in the complaint specified, which lies between the middle or center line of the Baraboo river and the south line of Water street, together with other lands not specified in the complaint. The said Chauncey

Brown and Clarissa Brown, upon the death of George W. Brown, entered into the possession of all the lands and. premises of which George W. Brown died seised, and remained in the possession thereof until the death of Clarissa Brown, February 26, 1854, excepting only such portions. thereof as had been sold by the administrators of the estate of George W. Brown, the same being wholly outside of the· lands in the complaint specified.   Clarissa Brown died in-· testate February 26, 1854, leaving her surviving her husband, Chauncey Brown, and nine children, to wit, Lura. Blake, Martha Langdon, William Brown (plaintiff), Emeline· Kelsey, Franklin Brown, Warren Brown, Edwin Brown, Adeline Bellis, and Chauncey Brown, Jr.   Polly Martin· predeceased her mother, Clarissa Brown, but as she left surviving children her interest descended to her children. The above named are the only heirs at law of Clarissa Brown.

After the death of Clarissa Brown, Chauncey Brown was, · and until August 28, 1854, remained, in the possession of all the said lands and premises of which George W. Brown died. seised, excepting only such portion thereof as had been sold. by the administrators of George, the same being wholly outside of the lands specified in the complaint.   Chauncey Brown, August 28, 1854, sold, and by warranty deed conveyed, to Joseph Sanford and Patrick Bassett, all of the said lands and premises of which the said George W. Brown died seised, excepting only such portion thereof as had been so sold by the administrators of said George.   Said deed of Chauncey Brown purported upon its face to convey the whole title to· the lands therein described, and was by the said grantees. thereto understood to convey the whole title thereto, and·· the same was received and accepted by Sanford and Bassett. as being a conveyance to them of the full title to said lands.. Sanford and Bassett entered into the immediate possession of the lands and premises in the said deed mentioned and described, and of the whole thereof, and ever since August 28,

1854, the said Sanford and Bassett, and their grantees, have been in the actual, open, visible, notorious, and exclusive possession of said lands and premises, and of the whole thereof, and such title remained undisputed until the time of the commencement of this action, October 10, 1892. The lands sold and conveyed by the said George W. Brown in his lifetime, together with the lands included in said deed to Sanford and Bassett, included all the lands specified and referred to in the complaint. Neither the said William Brown, nor his ancestors, predecessors, or grantors, have been in the possession of the said premises specified and described in the deed to Sanford and Bassett, including all the lands in the complaint herein claimed, excepting only such lands as had been previously sold and conveyed by George W. Brown in his lifetime, since August 28, 1854. Chauncey Brown died September 26, 1863. At the time of the death of Chauncey Brown, William Brown (plaintiff) was under no legal disability, and since said time has been under no legal disability. The grantors of William Brown, to wit, Franklin Brown, Martha Langdon, and Lura Blake, at the time of the death of Chauncey Brown, were under no legal disability, and since said time have been under no legal disability, excepting only that Lura Blake and Martha Langdon, at the time of the death of Chauncey Brown, were, and ever since said time have been, married women. All of the lands in the complaint specified are now used as public streets in the city of *Baraboo*, and have been for more than forty years.

As conclusions of law the court finds, in effect: That, upon the death of George W. Brown, all the lands of which he died seised descended equally to his father and mother, Chauncey and Clarissa Brown, as tenants in common. That upon the death of Clarissa Brown her interest in and to said real estate descended to her heirs at law, to wit, her husband, Chauncey Brown, as tenant by curtesy, and to her said

children, taking title thereto subject to such life estate. That, by the warranty deed executed and delivered by Chauncey Brown to Sanford and Bassett, he conveyed to them all the right, title, and interest which he, the said Chauncey Brown, then had in and to said premises. That the entry and possession of Sanford and Bassett under that deed became and was adverse to all the world, except as to the remaindermen, during the continuance of the life estate of the said Chauncey Brown therein. That, upon the death of the said Chauncey Brown, the holding and possession of the said premises by Sanford and Bassett became and were adverse to said remaindermen not under legal disability. That the said William Brown and Franklin Brown, not being under any disability at the time of the death of Chauncey Brown, became and were barred of all right, title, claim, and interest in and to said premises, including the premises specified in the complaint herein, not previously sold by George W. Brown in his lifetime, ten years after the time of Chauncey Brown's death, and before the time of the commencement of this action. That the heirs of the said Clarissa Brown under the disability of coverture at the time of the death of Chauncey Brown, to wit, Lura Blake and Martha Langdon, became and were barred of all right, title, claim, and interest in and to the said lands in the complaint specified, not conveyed by George W. Brown in his lifetime, ten years after ch. 29, Laws of 1872, went into effect, to wit, March 2, 1882. That at the time of the commencement of this action, William Brown had, no right, title, claim, or interest in or to the lands or premises specified in the complaint, nor in any part or portion thereof. That the defendant is entitled to judgment herein in its favor, and for its costs and disbursements in this action.

From the judgment entered upon such findings in favor of the defendant, William Brown appealed.

For the appellant there was a brief by *William Brown,*

*pro se*, and *Herman Grotophorst*, of counsel, and oral argument by *Mr. Grotophorst*. They contended, *inter alia*, that Chauncey Brown and Clarissa Brown were tenants in common. Upon the death of the latter her heirs took her title immediately and thus became tenants in common with the former. A deed by one tenant in common purporting to convey the whole premises is inoperative and void as against his cotenant. 4 Kent, Comm. 368; *Porter v. Hill*, 9 Mass. 34. By the deed from Chauncey Brown, his grantees became tenants in common with the heirs of Clarissa Brown. Under such circumstances the statute will not begin to run until an adverse holding is declared and notice thereof given to the holder of the legal title. *Neilson v. Grignon*, 85 Wis. 550; *Allen v. Allen*, 58 id. 202; *Bartlett v. Secor*, 56 id. 520; *Roebke v. Andrews*, 26 id. 311; *Schwallback v. C., M. & St. P. R. Co.* 69 id. 292; *Sydnor v. Palmer*, 29 id. 226; *Watts v. Owens*, 62 id. 512; *Stewart v. Stewart*, 83 id. 364; *Culver v. Rhodes*, 87 N. Y. 348. There must be some notorious act of ouster brought home to the knowledge of the cotenant, a silent possession being insufficient. *Challefoux v. Ducharme*, 4 Wis. 554; *Lessee of Clymer v. Dawkins*, 3 How. 674; *McClung v. Ross*, 5 Wheat. 116; *Kirk v. Smith*, 9 id. 241. A deed conveying land to the center of a street which has never been legally laid out does not constitute a dedication of such street to the public. *Hawthorne v. Myers*, 37 S. W. Rep. 593. The dam upon which the work was done is entirely outside the line of Vine street, and the bridge is a rod or two west of the premises in question. Any travel was done in line with the bridge and outside, or on the extreme limit, of the premises in question. These facts do not constitute the strip a highway by user. *Speir v. New Utrecht*, 121 N. Y. 420; *Cunningham v. Hendricks*, 89 Wis. 632; *Mahler v. Brumder*, 92 id. 477; *Holdane v. Cold Spring*, 21 N. Y. 474; *Fonda v. Borst*, 2 Keyes, 48; *Niagara Falls S. B. Co. v. Bachman*, 66 N. Y. 261; *People v. Underhill*, 144

Brown vs. The City of Baraboo.

id. 324; *Connehan v. Ford*, 9 Wis. 240; *Hanson v. Taylor*, 23 id. 547; *Eastland v. Fogo*, 66 id. 133; *Gardiner v. Tisdale*, 2 id. 153; *State ex rel. Lightfoot v. McCabe*, 74 id. 481; *Tupper v. Huson*, 46 id. 646; *Strong v. Brooklyn*, 68 N. Y. 1; *Pentland v. Keep*, 41 Wis. 490; *Fischer v. Laack*, 76 id. 313; *Dolphin v. Pedley*, 27 id. 469.

*R. D. Evans*, for the respondent, argued, among other things, that the heirs of Clarissa Brown became barred by the statute ten years after the death of Chauncey Brown, or ten years after the enactment of ch. 29, Laws of 1872. *Wiesner v. Zaun*, 39 Wis. 188; *Barrett v. Stradl*, 73 id. 385, 9 Am. St. Rep. 795; *Jackson v. Harsen*, 7 Cow. 323, 17 Am. Dec. 517; *Mettler v. Miller*, 129 Ill. 642; *Rohn v. Harris*, 130 id. 525; *Berry v. Hall*, 11 Ky. L. Rep. 30; *Gindrat v. Western R. Co.* 19 L. R. A. 839, 852, note. A conveyance by one cotenant of the entire estate gives color of title, and if possession is taken under it, the grantee claiming title to the whole, it amounts to an ouster of the cotenants, and the possession of the grantee is adverse to them. *Sydnor v. Palmer*, 29 Wis. 226; *Frick v. Sinon*, 75 Cal. 337, 7 Am. St. Rep. 177; *King v. Carmichael*, 136 Ind. 20; *Rutter v. Small*, 68 Md. 133; *Parker v. Proprietors of Merrimack Canal*, 3 Met. 91, 37 Am. Dec. 121; *Town v. Needham*, 3 Paige, 545, 24 Am. Dec. 246; *Baker v. Oakwood*, 123 N. Y. 16; *Dikeman v. Parrish*, 6 Pa. St. 210, 47 Am. Dec. 455; 1 Am. & Eng. Ency. of Law (2d ed.), 806.

CASSODAY, C. J. 1. Counsel contends that the defendant did not get title to any portion of the strip of land in question by virtue of any deed made by George W. Brown in his lifetime. The material question is whether George W. Brown, by such deed or deeds, parted with the title to any portion of such strip of land. If he did, then as to such portion his parents took no title. It is a cardinal principle in actions of ejectment that the plaintiff must recover, if at all,

on the strength of his own title, and not upon the weakness or want of title in the defendant. *Kelley v. McKeon*, 67 Wis. 561, and cases there cited. He must establish such title as against the world, or as against the defendant as a wrong-doer. *Id.* "It is an action to try the title and right to the possession of land. More accurately, it is an action to determine the *plaintiff's* title and his right to the possession." *Baldwin v. Ely*, 66 Wis. 177.

Conceding that the words in the deed from George W. Brown to Philarmon Pratt, "all the land lying between the present race and the Baraboo river," were erased before the execution of that deed, as contended by counsel, yet it does not follow that George W. Brown did not, in his lifetime, part with all title to that portion of the strip in question which lies between the mill race and the center of the river, since the deed from him to Delando Pratt and L. and J. Hayes was, manifestly, of land between the mill race and the river, as the same was "situated at the south end of the said George W. Brown's mill dam." That dam, as appears from the plats in evidence, was in line with Vine street and Oak street extended. The land conveyed to Delando Pratt and L. and J. Hayes was expressly excepted from such conveyance to Philarmon Pratt; and the erasures mentioned may have been, and probably were, so made, because otherwise they would have included the lands thus excepted. The contention that the land bounded by the river did not extend to the center of the river is certainly without foundation. *Norcross v. Griffiths*, 65 Wis. 599. But, independent of that, the land so conveyed to Philarmon Pratt was bounded "on the east by Walnut street, on the south by block number 7, on the west by Vine street," and "on the north by the center of the Baraboo river," and conveyed "the sawmill and the south half of the dam." The land so conveyed is a portion of the land marked on the plat as "reserved for private use;" and although bounded

on the east by Walnut street, and on the west by Vine street, yet neither of those streets appears upon the plat as extending north of block 7. Nevertheless, the grantee in that deed, and those claiming under him, thereby acquired the right, as against the grantor and those claiming under him, to treat each and both of these streets as extending north to the river; and it is established by the evidence that at the time of making the deed Vine street was being used by the public as and for a public street, four rods wide, from blocks 7 and 8, as far north as the mill race; and that such use by the public has continued ever since, and that for more than forty years Vine street, so extended, has been used by the public, as and for a public street, as far north as the river. There can be no question but that Pratt, as such grantee, took title to the center of Vine street, so extended to the river, subject, however, to the public easement. "It is the settled doctrine in this state that the grantee of a lot in a recorded plat, except where the terms of his deed or the plat expressly exclude that construction, takes to the center of adjoining public ways, subject to the public easement; and the fact that the description in his deed, after stating the number of his lot, gives its dimensions as they are exclusive of the highway, does not affect the construction." *Pettibone v. Hamilton*, 40 Wis. 402; *Jarstadt v. Morgan*, 48 Wis. 245; *Andrews v. Youmans*, 78 Wis. 56; *Johnson & Co. v. Arnold*, 91 Ga. 659.

2. The warranty deed of August 28, 1854, from Chauncey Brown to Sanford and Bassett, mentioned in the foregoing statement, covered and purported to convey the absolute title to "all of the mill reservation along Water street and south to the Baraboo river, together with the water power and reservation on the south side of the Baraboo river, all of that piece of land lying north of the north line of blocks number 6, 7, and 8, and south of the Baraboo river." This included the west half of Vine street, so extended north

from blocks 7 and 8 to the center of the Baraboo river, and in fact the whole of that street so extended from these blocks north to Water street, designated on the plat. It is conceded that that deed conveyed the undivided one-half of all the lands described therein, and of which George W. Brown died seised,— as all the lands of which he so died seised descended to his father and mother equally, as tenants in common. *Brown v. Baraboo,* 90 Wis. 151. The mother having died intestate prior to the deed so given to Sanford and Bassett, her moiety of such lands descended to her heirs at law, subject to an estate for life in her husband, Chauncey Brown, as tenant thereof by the curtesy. R. S. 1858, ch. 89, sec. 30; R. S. 1878, sec. 2180. As such life estate terminated on the death of Chauncey Brown, it follows that the legal title and right to the possession of the several interests of William Brown, Franklin Brown, Martha Langdon, and Lura Blake, under whom the plaintiff claims title, representing four tenths of one half of so much of the strip of land in question as George W. Brown died seised of, became absolutely vested in them, severally, September 26, 1863. And yet it is undisputed that August 28, 1854, Sanford and Bassett, under such warranty deed to them from Chauncey Brown, purporting to convey to them the whole title to the lands in question, entered into the immediate possession of said lands, and the whole thereof, and that ever since that time they and their grantees have been in the actual, open, visible, notorious, and exclusive possession of the same, and the whole thereof, and that such title remained undisputed until the commencement of this action, October 10, 1892. The defendant's title to so much of the strip of land in question as George W. Brown died seised of is directly traceable to the deed to Sanford and Bassett mentioned. Thus it appears that William Brown, Franklin Brown, Martha Langdon, and Lura Blake, severally, slept on their rights, and made no claim to any portion of the strip of land in question, for more than twenty-nine

years.  During that time neither William Brown nor Franklin Brown was under any disability.  It is true that Mrs. Langdon and Mrs. Blake were married women at the time of Chauncey Brown's death, when such real estate descended to them and their right of action therefor first accrued; and hence the statute of limitations did not, by reason of their disability, commence to run against either of them under the statute then in force.  R. S. 1858, ch. 138, sec. 13.  Such disability of married women was entirely removed March 2, 1872, by ch. 29, Laws of 1872, and such has since that time continued to be the law.  R. S. 1878, sec. 4218.  The result is that the ten-years statute of limitation commenced running against Mrs. Langdon and Mrs. Blake, respectively, March 2, 1872, and against William Brown and Franklin Brown, respectively, September 26, 1863.  R. S. 1878, sec. 4211.  The action was not commenced until more than twenty years after the cause of action accrued in favor of the women, and more than twenty-nine years after the cause of action accrued in favor of the men.  The fact that Chauncey Brown only had a life estate in the undivided one-half of the lands so conveyed by him to Sanford and Bassett did not prevent the statute running in their favor or in favor of the defendant as a grantee under them.  *Wiesner v. Zaun,* 39 Wis. 188; *Westcott v. Miller,* 42 Wis. 463, 464; *Barrett v. Stradl,* 73 Wis. 385.  Thus it appears that neither William Brown, nor Franklin Brown, nor Mrs. Langdon, nor Mrs. Blake, was seised or possessed of any portion of the strip of land in question at any time during the twenty years immediately before the commencement of this action, and hence the plaintiff is barred from maintaining the same.  R. S. 1878, sec. 4207.

3.  The court found that by the plat of the village of Baraboo, made November 1, 1847, George W. Brown dedicated to the public, as a public street, all that portion of the land specified in the complaint which lies north of the south line of Water street, designated thereon.  As indicated in the

statement made, that plat extended north to the town line. Adjoining that plat on the north, and in another town, there was at the time a plat of the village of Adams. Oak street, mentioned, ran north and south and was one of the streets so platted in the village of Adams. Vine street, as indicated on the plat of the village of Baraboo, was in the direct line with Oak street, as designated on the plat of the village of Adams. Between blocks 2 and 3 in the village plat of Baraboo, and extending from Water street north to Oak street, on the town line, a street is designated on the plat, and the same must be regarded as a part of Vine street. This explains why the land conveyed by George W. Brown to Pratt was bounded on the west by Vine street. On the plat of the village of Baraboo, Water street is designated as running east and west along the south side of blocks 1, 2, and 3. It is true that the south line of the western portion of that street is not designated on the plat, but the several lots in blocks 1, 2, and 3 front upon it, and three streets from the north are indicated as running into it, and two streets on the eastern end are designated as running into it from the south. Besides, it is stated on the plat, among other things, that "all full lots are 66 feet by 132,— all the streets 66 feet wide." The mere fact that the south line of the street, on the western end thereof, is not designated on the plat, does not, in our judgment, prevent the effectual dedication to the public of Water street as and for a public street. True, the statute required the plat to "particularly describe and set forth all the streets, . . . giving the names, widths, courses, boundaries, and extent of all such streets." Terr. Stats. of 1839, p. 159, § 1; R. S. 1849, ch. 41, sec. 1. But that was, in effect, done. *Ely v. Bates*, 5 Wis. 467; *Weisbrod v. C. & N. W. R. Co.* 21 Wis. 602. The plat made and recorded, as indicated, followed by public travel upon such streets for more than forty years, must be regarded as a sufficient dedication of the streets to the public

for public use as such. *Buchanan v. Curtis*, 25 Wis. 99; *Pettibone v. Hamilton*, 40 Wis. 402; *Jarstadt v. Morgan*, 48 Wis. 245; *Donohoo v. Murray*, 62 Wis. 100.

We find no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.

